# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| CENTER FOR INQUIRY, INC., ARTHUR BRATTENG, and ERIC MCCUTCHAN, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-2943-B |
| JOHN F. WARREN in his capacity as Clerk of Dallas County, Texas, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Center for Inquiry, Inc. (CFI)—a nonprofit organization whose mission is to foster a secular society in part through a celebrants program offering secular marriage ceremonies—and two of its celebrants authorized by CFI to solemnize marriages, Arthur Bratteng and Eric McCutchan, bring suit asking this Court to declare unconstitutional parts of a Texas statute governing who can solemnize marriages in Texas. In sum, Plaintiffs argue the statute—by only allowing religious officiants and certain government officials to lawfully solemnize marriage ceremonies, while denying that right to secular individuals—infringes on several of their constitutional rights. Defendant in turn seeks dismissal of this suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that Plaintiffs lack standing to bring their claims and that the Statute is otherwise constitutional. Having been fully briefed on this Motion, the Court finds that Plaintiffs do have Article III standing to bring their claims, and therefore, the Court **DENIES** Defendant's Motion to Dismiss under Rule 12(b)(1). However, the Court finds that the Statute is constitutional under the various constitutional claims

brought by Plaintiffs, and therefore, the Court **GRANTS** Defendant's Motion to Dismiss under Rule 12(b)(6) and **DISMISSES** all of Plaintiffs' claims **with prejudice**.

## I.

## BACKGROUND[1]

This dispute involves the constitutionality of Section 2.202 of the Texas Family Code (hereinafter "Section 2.202" or the "Statute"), which only authorizes persons who are officers of a religious organization and authorized by the organization to conduct marriages (*e.g.*, ministers, priests, rabbis) and secular governmental officials (*e.g.*, current and retired state and federal judges) to solemnize marriage ceremonies in Texas, while not granting that same right to non-governmental secular individuals. Doc. 1, Compl., ¶¶ 1, 14. The suit is brought by CFI, "an organization that is devoted to the pursuit of ethical alternatives to religion," and two of its Texas members—Eric McCutchan and Arthur Bratteng—who are "celebrants" certified by CFI to solemnize secular marriage ceremonies. *Id.* ¶¶ 1, 4–6, 21–22. Plaintiffs allege that they wish to conduct marriage ceremonies in Texas, but due to the Statute, they are unable to lawfully perform these services. *Id.* ¶¶ 21–22, 27. Plaintiffs further allege that CFI has members in Texas who would like to be married by CFI's celebrants but are unable to have such a wedding ceremony because of the Statute. *Id.* ¶¶ 23, 30. This suit is brought against John F. Warren, in his official capacity as Dallas County Clerk, who is ultimately given the authority to record marriages licenses in Dallas County, and who allegedly refuses to record licenses returned by secular celebrants. *Id.* ¶¶ 7, 31.

Plaintiffs filed suit under 42 U.S.C. § 1983 challenging the constitutionality of Section 2.202

---

[1]The Court draws its factual account from the Plaintiffs' Complaint (Doc. 1) as well as the parties' briefing on the Motion at issue. Any contested facts are noted as such.

on four separate grounds. As discussed in more detail below, Plaintiffs argue that the Statute is unconstitutional because: (Count I) it creates a preference for religion over nonreligion in violation of the First Amendment's Establishment Clause, *id.* ¶¶ 33–38; (Count II) it violates the Fourteenth Amendment's Equal Protection Clause by extending the right to officiate weddings to religious leaders and allowing persons of faith to be married by religious leaders of their choice while denying that right to Plaintiffs and couples who desire secular weddings, *id.* ¶¶ 39–43; (Count III) it violates Article VI, Clause 3 of the Constitution's protection against religious tests being used as qualifiers for any office or position of public trust in the United States by requiring a person to profess a religious faith before being given legal authority to solemnize marriages in Texas, *id.* ¶¶ 44–49; and (Count IV) it violates the unconstitutional-conditions doctrine by conditioning a benefit—solemnizing marriages in Texas—only on those who profess a religion, *id.* ¶¶ 50–56. Ultimately, Plaintiffs seek a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2202, that Section 2.202 is unconstitutional and that Defendant must accept marriages solemnized by Plaintiffs. *Id.* ¶¶ 57–59.

In response to Plaintiffs' Complaint, Defendant filed this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 11, Def.'s Mot. to Dismiss, 1. Defendant moved to dismiss Plaintiffs' claims arguing that: (1) Plaintiffs lack standing to bring this suit; and (2) even if the Court were to find that Plaintiffs have standing, they have failed to state any claim upon which relief can be granted. *Id.* Plaintiffs filed their Response (Doc. 18) to Defendant's Motion, and Defendant his Reply (Doc. 19). Defendant's Motion is therefore ripe for the Court's review.

## II.

## LEGAL STANDARDS

A.     *Federal Rule of Civil Procedure 12(b)(1)*

"'Federal courts are courts of limited jurisdiction.'" *MacKenzie v. Castro*, No. 3:15-cv-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012). And Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which a party may challenge that jurisdiction. *Id.* "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, 2015 WL 5613321, at *2 n.5 (N.D. Tex. Sept. 24, 2015) (citing *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013)).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So Plaintiffs must prove jurisdiction exists. Here, Defendant filed his Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court considers just the sufficiency of "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And "[i]f those jurisdictional allegations are sufficient, the complaint stands." *Id.*

B.     *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

The Court now turns to Defendant's grounds for dismissal under Rules 12(b)(1) and 12(b)(6). Because the Fifth Circuit has instructed courts to first address jurisdictional arguments before any attack on the merits, the Court will begin with Defendant's arguments under Rule

12(b)(1). *See Ramming*, 281 F.3d at 161. However, to put this dispute in context, the Court first summarizes the marriage-licensing scheme in Texas, including the requirements of Section 2.202.

A.      *Texas's Marriage-Licensing System*

At issue in this case is Section 2.202 of the Texas Family Code, which provides in relevant part that:

>    (a) The following persons are authorized to conduct a marriage ceremony:
>
>         (1) a licensed or ordained Christian minister or priest;
>
>         (2) a Jewish rabbi;
>
>         (3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony;
>
>         (4) a justice of the supreme court, judge of the court of criminal appeals, justice of the courts of appeals, judge of the district, county, and probate courts, judge of the county courts at law, judge of the courts of domestic relations, judge of the juvenile courts, retired justice or judge of those courts, justice of the peace, retired justice of the peace, judge of a municipal court, retired judge of a municipal court, associate judge of a statutory probate court, retired associate judge of a statutory probate court, associate judge of a county court at law, retired associate judge of a county court at law, or judge or magistrate of a federal court of this state; and
>
>         (5) a retired judge or magistrate of a federal court of this state.

Tex. Fam. Code § 2.202(a). The person who performs the ceremony must return the license to a County Clerk, such as Defendant, who will then record and issue the completed marriage certificate. *Id.* §§ 2.206, 2.208. Although a marriage ceremony conducted by an unauthorized person may be invalid, and a person who knowingly conducts a marriage ceremony in Texas without the requisite authority is guilty of a Class A misdemeanor, *id.* §§ 2.202(c), 2.302, Defendant is not required by the Texas Family Code to examine the credentials of the person who returns a marriage license, *see id.*

§ 2.208. In fact, Defendant argues that neither the Texas Family Code, and by extension himself, in his capacity as Clerk of Dallas County, Texas, "make any judgment with respect to the sincerity, validity, or merit of any religion's beliefs or the qualifications of any religion's officers, instead treating all religions equally." Doc. 11, Def.'s Mot. to Dismiss, 2. However, Plaintiffs still take issue with this Statue because "persons seeking to celebrate a secular marriage ceremony in Texas must either choose from a list of unfamiliar state and federal judges or forsake their secular philosophies and employ a religious celebrant." Doc. 18, Pls.' Resp., 4.

B.    *Dismissal Under Rule 12(b)(1)—Article III Standing*

Defendant first challenges Plaintiffs' constitutional claims arguing that Plaintiffs—both CFI, the organization; and McCutchan and Bratteng, the two individual celebrants (hereinafter the "Individual Plaintiffs")—lack standing because they have not suffered any injury-in-fact. Doc. 11, Def.'s Mot. to Dismiss, 4–6.

The judicial power of federal courts is limited by Article III of the Constitution. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 318 (5th Cir. 2002). "'[T]he Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). Constitutional or Article III standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) (quoting *Lujan*, 504 U.S. at 560). To satisfy the prerequisites of Article III standing, Plaintiffs must show that: (1) they suffered an injury in fact (one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) there is a causal connection between the injury and the challenged conduct of the defendant;

and (3) the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 559–60.

Defendant does not challenge Plaintiffs' ability to demonstrate the traceability or redressability elements of the constitutional standing doctrine. The sole inquiry is whether Plaintiffs' claims—both for CFI as an organization and the Individual Plaintiffs—meet the first element of Article III standing, injury-in-fact.[2] However, because the injury-in-fact showing required for CFI is different from the showing required for the Individual Plaintiffs and because the Court's determination on the Individual Plaintiffs' standing is partially relevant to CFI's associational standing, the Court addresses whether the Individual Plaintiffs have suffered an injury-in-fact before discussing the same for CFI.

1.      Individual Plaintiffs' Standing

With regards to the Individual Plaintiffs, Defendant argues that they have not suffered "an invasion of a legally protected interest" because "they have no legally cognizable *right* to perform marriage ceremonies." Doc. 11, Def.'s Mot. to Dismiss, 4–5 (emphasis in original) (quoting *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017)). Defendant argues that because "the asserted right to conduct a marriage ceremony is not found anywhere in the Constitution . . . all of Plaintiffs' claims must be dismissed for failure to establish an injury in fact." *Id.* at 5. Plaintiffs instead argue that these

---

[2] Although Defendant does not challenge Plaintiffs' standing on traceability or redressability grounds, the Court finds these two additional elements are met in this case. For traceability, it is undisputed that Defendant, as the Dallas County Clerk, is the individual who is ultimately given the authority to record marriages licenses in Dallas County, and who allegedly refuses to record licenses returned by secular celebrants. *See* Doc. 1, Compl., ¶¶ 7, 31. And as to redressability, this Court "may remedy the injuries caused by a constitutionally underinclusive scheme either by 'declar[ing] the [statute] a nullity and order[ing] that its benefits not extend to the class that the legislature intended to benefit, or . . . [by] extend[ing] the coverage of the statute to include those who are aggrieved by the exclusion.'" *See Martinez v. Clark Cty., Nev.*, 846 F. Supp. 2d 1131, 1140 (D. Nev. 2012) (alterations in original) (quoting *Heckler v. Mathews*, 465 U.S. 728, 738–39 (1984)). Thus, the only constitutional-standing element in dispute is injury-in-fact.

celebrants have suffered an injury-in-fact sufficient to satisfy constitutional standing because the Statute "allows religious celebrants to obtain a benefit—the ability to lawfully solemnize a marriage—but erects a barrier that prevents secular celebrants from being able to do the same." Doc. 18, Pls.' Resp., 7.

> Ultimately, the Court finds that Plaintiffs' argument prevails.
>
> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Thus, [d]iscriminatory treatment at the hands of the government is an injury 'long recognized as judicially cognizable.'" *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008) (quoting *Heckler*, 465 U.S. at 738).

As Plaintiffs argue, "CFI's secular celebrants are trained to bring solemnity and gravity to a marriage ceremony in a manner that reflects the couple's moral and philosophical beliefs, much the same way religious clergy are trained to bring solemnity and gravity to a religious marriage ceremony." Doc. 18, Pls.' Resp., 7. But despite this alleged similarity, the Statute extends the benefit of lawfully solemnizing marriages to religious celebrants while denying the same benefit to Individual Plaintiffs. Defendant argues that Individual Plaintiffs' reliance on *Northeastern* and their equal-protection-type injury to establish standing is misplaced because despite their alleged unequal treatment, Plaintiffs have no entitlement to the "benefit" of performing marriage ceremonies. Doc. 19, Def.'s Reply, 2–3, 2 n.1.

However, even if that is true, "[a]s *Northeastern* held, such discrimination can constitute an injury because it positions similar parties unequally before the law; no further showing of suffering based on that unequal positioning is required for purposes of standing." *Hudson*, 265 F. App'x at 218. "The standing inquiry is a threshold jurisdictional issue and focuses on the ability of a particular party to bring claims before a federal court, not on the issues on which adjudication is sought." *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 415 (N.D. Tex. 2013) (Boyle, J.) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Thus, regardless of whether Individual Plaintiffs have a constitutional right to perform marriage ceremonies or not—which the Court discusses below—it is clear that Individual Plaintiffs have a federal constitutional right to bring claims to ensure that they are afforded equal protection as defined by the law. Therefore, the Court finds that the Individual Plaintiffs have alleged a constitutional injury sufficient to demonstrate standing. *See Martinez*, 846 F. Supp. 2d at 1140–41 (finding that the plaintiffs who sought to obtain a certificate to solemnize marriages in Nevada had standing to challenge Nevada's marriage solemnization law).

2.      CFI's Associational Standing

With regards to CFI's standing, Defendant argues that the effect of Section 2.202 on CFI is "nonexistent" because "even CFI does not go as far as to claim that a corporation must be permitted to conduct marriage ceremonies." Doc. 11, Def.'s Mot. to Dismiss, 4. Defendant further argues that "[t]o the extent that Plaintiffs are attempting to argue that harm is visited upon people who are seeking to become married, . . . they have no standing to prosecute the claims of third parties that are not before this Court." *Id.* at 5. Plaintiffs however argue that CFI has associational standing on behalf of its members because the Statute "visits harm on its members who are seeking to become married." Doc. 18, Pls.' Resp., 7–8.

The Court again finds that Plaintiffs' argument prevails.

> Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members.

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). "If a single member of the organization has standing to bring the suit, then so, too, does the organization." *Heap v. Carter*, 112 F. Supp. 3d 402, 418 (E.D. Va. 2015) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 155 (4th Cir. 2000)).

First, CFI's members independently meet the Article III standing requirements. The Complaint alleges that CFI "is a membership organization with over 30,000 members." Doc. 1, Compl., ¶ 16. Its members include: CFI-certified secular celebrants, such as Individual Plaintiffs; other members "who are or may become certified secular celebrants;" and couples "who would like to be married by a person who has completed the secular celebrant program and is authorized by [CFI] to solemnize marriages." *Id.* ¶¶ 21–23, 28. As discussed above, the Court finds that Individual Plaintiffs who are CFI members have suffered a constitutional injury sufficient to satisfy Article III standing. Similarly, CFI members who wish to be married by a CFI secular celebrant would have standing to bring suit for similar reasons that Individual Plaintiffs have standing: the Statute provides religious couples a benefit—the ability to have a wedding performed by a celebrant who shares their ethical and moral values—that it denies to secular couples. Thus, the first element of associational standing is met.

Second, it is undisputed that the interests CFI seeks to protect in this lawsuit are germane

to the purpose of the organization. CFI's stated mission is to "foster a secular society based on reason, science, freedom of inquiry, and humanist values." *Id.* ¶ 17. By bringing this lawsuit, CFI argues that it "seeks to protect its members' constitutional right to have their secular, humanist values reflected in their wedding ceremonies." Doc. 18, Pls.' Resp., 8. Thus, the second element of associational standing is met.

And lastly, CFI argues that while it "can adequately protect [its members' constitutional] interest and assert these claims without the participation of individual members, two members—Bratteng and McCutchan—are parties to this suit." *Id.* The Court agrees. Nothing about the constitutional claims asserted by CFI would require CFI members who wish to be married by secular celebrants participate in this lawsuit; their interests are fully represented by CFI. And the type of relief sought—an injunction preventing Defendant from precluding secular celebrants from conducting marriage ceremonies and a declaratory judgment finding the Statute unconstitutional—will ultimately benefit CFI's members. Thus, the third element of associational standing is met.

Therefore, the Court finds that both the Individual Plaintiffs and CFI have suffered a constitutional injury-in-fact sufficient to satisfy Article III standing, and thus, the Court **DENIES** Defendant's Motion to Dismiss under Rule 12(b)(1).

C.      *Dismissal Under Rule 12(b)(6)*

Now that the Court has determined that Plaintiffs have standing to bring their claims, the Court addresses the sufficiency of those claims under Rule 12(b)(6). To reiterate, Plaintiffs allege causes of action pursuant to 42 U.S.C. § 1983 under four theories: (1) violation of the Establishment Clause of the U.S. Constitution; (2) violation of the Equal Protection Clause of the U.S.

Constitution; (3) violation of Article VI, Clause 3 of the U.S. Constitution; and (4) violation of the unconstitutional-conditions doctrine. Defendant moves to dismiss all of Plaintiffs' claims arguing that the Statute does not violate any of Plaintiffs' constitutional rights, and thus, the Statute should be upheld as constitutional. The Court addresses each claim in turn.

1.      Establishment Clause of the U.S. Constitution

The First Amendment's Religion Clauses, made applicable to the States via the Fourteenth Amendment, provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *see Everson v. Bd. of Ed. of Ewing*, 330 U.S. 1, 8 (1947). "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Id.* "While the two Clauses express complementary values, they often exert conflicting pressures." *Id.* (citing *Locke v. Davey*, 540 U.S. 712, 718 (2004) ("These two Clauses . . . are frequently in tension."); *see also Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 668–69 (1970) ("The Court has struggled to find a neutral course between the two Religion Clauses, both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other.")).

This tension exists in part because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *See Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987) (footnote omitted). However, "[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward

religion, . . . favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994) (internal citations omitted). Thus, the Supreme Court established a three-part test designed to evaluate whether a statute violates the Establishment Clause, and which makes a statute unconstitutional if it: (1) lacks a legitimate secular purpose; (2) has the primary effect of advancing or inhibiting a religion; or (3) fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U. S. 602, 612–13 (1971). But *Lemon* is not the exclusive test. Particularly relevant to this case and the arguments raised by the parties, after the test announced in *Lemon*, the Supreme Court approved the endorsement test, which is construed as part of the second prong of *Lemon* and which considers "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *See Cnty. of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 592–93 (1989).

And finally, most recently, the Supreme Court has stressed the importance of conducting an Establishment Clause analysis by first looking to history for guidance. *See Am. Legion v. Am. Humanist Assoc.*, 139 S. Ct. 2067, 2087–88 (2019) (plurality opinion) (discussing the development of Supreme Court jurisprudence utilizing a historical approach). The Supreme Court adopted this historical approach to the Establishment Clause in *Marsh v. Chambers*, 463 U.S. 783 (1983), and reiterated it in *Town of Greece* by stating that "it is not necessary to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 577 (2014). However, "[a]s the Court put it in *Town of Greece*: "*Marsh* must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation." *Am. Legion*, 139 S. Ct. at 2087 (quoting *Town of Greece*, 572 U.S. at 576). "The case teaches instead that the Establishment Clause must be interpreted 'by

reference to historical practices and understandings.'" *Town of Greece*, 572 U.S. at 576 (quoting *Cty. of Allegheny*, 492 U.S. at 670). With these constitutional principles in mind, the Court turns to the parties' arguments.

Defendant moves to dismiss Plaintiffs' Establishment Clause claim arguing that the Statute is constitutionally permissible when considered against this Country's historical foundation of only allowing certain specified individuals, including religious officials, to solemnize marriages. Doc. 11, Def.'s Mot. to Dismiss, 6–9. Defendant further argues that although application of the three-pronged test announced in *Lemon* is not necessary in this case, the Statute nonetheless satisfies each prong. *Id.* at 9–11. Plaintiffs, on the other hand, argue that despite the longstanding history behind a state's ability to limit the type of individuals legally allowed to perform marriages, this Statute nevertheless violates the Establishment Clause because it favors religious organizations and belief systems over secular ones and also violates each prong of the *Lemon* test. Doc. 18, Pls.' Resp., 9–14.

Because "pinning down the meaning of a 'law respecting an establishment of religion' has proved to be a vexing problem," *Am. Legion,* 139 S. Ct. at 2080 (plurality opinion), the Court considers the Statute's constitutionality under two tests argued by the parties as well as the Seventh Circuit's approach in a similar case.[3] Ultimately, the Court finds that Plaintiffs have failed to show that the Statute violates the Establishment Clause under each constitutional approach. First, although the historical foundation underlying this Statute supports allowing religious officials and

---

[3] The Fifth Circuit has approved this multi-framework approach when it stated that "[i]n reviewing the constitutionality of a challenged government action under the Establishment Clause, we use a 'multi-test analysis' that has 'result[ed] from an Establishment Clause jurisprudence rife with confusion and from our own desire to be both complete and judicious in our decision-making.'" *See Croft v. Perry*, 624 F.3d 157, 165 (5th Cir. 2010) (quoting *Freiler v. Tangipahoa Par. Bd. of Educ.*, 185 F.3d 337, 344 (5th Cir. 1999)).

judges to lawfully solemnize marriages without violating the Constitution, the Court does not find the historical approach dispositive in this case. Second, analyzing this Statute under the *Lemon* test and the related endorsement test, the Court finds that the Statute is supported by a secular purpose, does not have a primary effect of advancing or endorsing religion, and does not foster an excessive entanglement with religion. And third, while the Seventh Circuit's approach in *Center for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869 (7th Cir. 2014) is notable, it is not binding on this Court, and in any case the Court finds that the differences between the Indiana statute in that case and the Statute at issue here warrant a different outcome.

  a.  *Historical Test*

  Defendant's main argument significantly relies on the Supreme Court's decision in *Town of Greece*; he argues that although the Statute may provide an indirect or incidental benefit to religion without extending that same benefit to nonreligion, the Statute remains "well within the boundaries of the Establishment Clause because 'history shows that the specific practice is permitted.'" *See* Doc. 11, Def.'s Mot. to Dismiss, 7 (quoting *Town of Greece*, 572 U.S. at 577). Specifically, Defendant argues that the notion that marriage ceremonies must be officiated by a religious officer or by a specified state official is and has been uncontroversial throughout the Nation's history, and were within the rights understood and established by the Framers. *Id.* at 7–8 (citing Michael W. McConnell, Establishment and Disestablishment at the Founding, Part I: Establishment of Religion, 44 Wm. & Mary L. Rev. 2105, 2175 (2003) (discussing the legal history of who could and could not solemnize marriages); Robert E. Rains, Marriage in the Time of Internet Ministers: I Now Pronounce You Married, but Who Am I to Do So?, 64 U. Miami L. Rev. 809, 842–77 (2010) (reproducing analogous statutory provisions from every state, including Texas)). The Court finds Defendant's

arguments, which rely on *Town of Greece* and the historical approach, support allowing religious officials and judges to lawfully solemnize marriages without violating the Constitution; however, the Court does not find the historical approach dispositive in this case for two reasons.

First, *Town of Greece* and *Marsh* were decided in different contexts. Both *Town of Greece* and *Marsh* concerned the long established practice of opening legislative meetings with prayer. *See Town of Greece*, 572 U.S. at 570–71, 575. In these prayer cases, the Supreme Court adopted a historical approach to the Establishment Clause, holding that "it is not necessary to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted." *Id.* at 577. The Supreme Court held that the town's prayer practice in *Town of Greece* fit within the tradition long followed in Congress and the state legislatures at the time the Framers drafted the Constitution, and thus, did not amount to an establishment of religion in violation of the First Amendment. *See id.* at 577–80. However, while *Town of Greece* and *Marsh* "concern[ed] what a chosen agent of the government says as a part of the government's own operations . . . [t]hey d[id] *not* concern how a state regulates private conduct." *Center for Inquiry, Inc.*, 758 F.3d at 874 (emphasis in original). Unlike the prayer practices in *Town of Greece* and *Marsh*, the Statute here regulates private conduct by specifying which individuals can lawfully solemnize marriages. Thus, "although *Marsh* and [*Town of*] *Greece* show that a government may, consistent with the First Amendment, open legislative sessions with Christian prayers while not inviting leaders of other religions, they do not begin to suggest that a state could limit the solemnization of weddings to Christians, while excluding . . . humanism." *Id.*

Second, even if the Court were to look at the historical foundation of marriage solemnization in this Country, as Defendant argues, "[f]or hundreds of years . . . persons who could solemnize

marriages included clergy, public officials, sea captains, notaries public, and the celebrant themselves." Doc. 11, Def.'s Mot. to Dismiss, 7 (quoting *Ctr. for Inquiry*, 758 F.3d at 875). However, the Statute does not provide for such an exhaustive list that encompasses the historical tradition of marriage solemnization in this Country as Defendant defines it.[4] Therefore, even applying the historical test as stated in *Town of Greece*, the Court would not be able to conclusively determine that the Statute comports with the Establishment Clause. This is because while it is the case that marriage solemnization was historically left in part to religious officials—and thus, this tradition supports the practice of a state permitting religious officials to lawfully solemnize a marriage without violating the Establishment Clause—that alone does not explain why a state may in effect provide a benefit to religion without extending that same benefit to secular individuals who have historically been granted that benefit in the past.

Therefore, because the Court finds that the historical foundation of this Statute supports only part of the Statute as written, the Court proceeds to analyzing the Statute under the *Lemon* test. *Cf. Town of Greece*, 572 U.S. at 575 (recognizing that the Supreme Court in *Marsh* found that the

---

[4] Plaintiffs argue that one way the Statute "could be remedied is by including notaries public in the group of people authorized to perform marriage ceremonies." Doc. 18, Pls.' Resp., 10; *see also Ctr. for Inquiry*, 758 F.3d at 875 (the plaintiffs in that case similarly argued "that they would be satisfied if notaries were added to the list; nothing in humanism makes it inappropriate for a leader (or any other member) to be a notary public"). In fact, other states' marriage-solemnization statutes provide a more expansive list of secular individuals who can lawfully solemnize marriages, including notaries public. *See Ctr. for Inquiry*, 758 F.3d at 871 ("three states (Florida, Maine, and South Carolina) authorize humanists to solemnize marriages by becoming notaries public . . . . Four states (Alaska, Massachusetts, Vermont, and Virginia) allow anyone to solemnize a marriage, and another six (Colorado, Kansas, Montana, Pennsylvania, New York, and Wisconsin) allow the couple to solemnize their own marriage"). The Court notes Plaintiffs' proposed remedy and the statutes of other states not to say that this Statute violates the Establishment Clause by failing to include notaries public in the group of people authorized to lawfully perform marriage ceremonies—which the Court ultimately finds that it does not—but instead, to highlight that the Statute as written does not appear to be fully supported by the historical foundation of marriage solemnization as defined by Defendant.

"formal tests" that had typically been used in Establishment Clause jurisprudence were unnecessary to apply because history showed that the specific practice was constitutionally permissible).

*b.*     Lemon *Test*

Under the *Lemon* test, a law must be invalidated if: (1) it does not have a secular purpose; (2) it has the principal or primary effect of advancing or inhibiting religion; or (3) it fosters excessive government entanglement with religion. *Lemon*, 403 U. S. at 612–613. A law is unconstitutional under the *Lemon* test if it fails any one of the three prongs. *See Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 293 (5th Cir. 2001) The Court addresses each prong but ultimately finds that the Statute is supported by a secular purpose, does not have a primary effect of advancing or endorsing religion, and does not foster an excessive entanglement with religion.

Under the first prong "[a] statute will be found unconstitutional if it was motivated wholly by an impermissible purpose, or if the religious purpose predominates." *Sch. Bd. of Ouachita Par.*, 274 F.3d at 293 (alterations incorporated). "The Supreme Court has provided guidance on what evidence a court should consider in evaluating whether the government's purpose is proper:

> A Court's finding of improper purpose behind a statute is appropriately determined by the statute on its face, its legislative history, or its interpretation by a responsible administrative agency. The plain meaning of the statute's words, enlightened by their context and the contemporaneous legislative history, can control the determination of legislative purpose. Moreover, in determining the legislative purpose of a statute, the Court has also considered the historical context of the statute, and the specific sequence of events leading to passage of the statute.

*Id.* at 293–94 (quoting *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987)).

Defendant argues that the Statute's purpose is two-fold: (1) the Statute's "selection of individuals who are permitted to conduct marriage ceremonies ensures that the appropriate respect, gravity, and solemnity is provided to the occasion of a marriage"; and (2) the Statute does so "while

-19-

also permitting both religious and nonreligious individuals to have a range of potential officiants for their ceremonies." Doc. 11, Def.'s Mot. to Dismiss, 9–10. Plaintiffs argue that the first purpose appears pre-textual because individuals can be ordained through several "internet churches" (*e.g.*, Universal Life Church, Hawai'i Cannabis Ministry, Church of Body Modification), which allegedly require no training and provide no standards for selecting officiants, yet can lawfully solemnize marriages because they nevertheless qualify under the Statute. Doc. 18, Pls.' Resp., 11–12, 12 nn.2–5. Defendant in his Reply does not contest that these persons ordained through so-called "internet churches" can in fact lawfully solemnize marriages under the Statute, but instead argues that the Statute respects all faiths by refusing to make an inquiry into a religious official's qualifications, beliefs, or sincerity. Doc. 19, Def.'s Reply, 5.

In essence, Plaintiffs are arguing that Defendant's first stated secular purpose is a "sham." *See Croft*, 624 F.3d at 166–67 (holding that while courts are "normally deferential to a [legislative] articulation of a secular purpose," courts "do review to ensure that the alleged secular purpose is the actual purpose" and that "a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a 'sham'"). "In undertaking [a] 'sham' inquiry, we consider whether [the challenged action] furthers the particular purposes articulated by the [legislature] or whether the [challenged action] contravenes those avowed purposes." *Id.* (quoting *Freiler*, 185 F.3d at 344).

Based on the information before the Court, the Court cannot definitively say that Defendant's first stated secular purpose is a sham as defined by the law. For example, neither party points to any legislative history or other information to allow this Court to determine whether this stated purpose is a sham and not the actual secular purpose that Defendant proffers. *See Croft*, 624 F.3d at 167 (holding that legislative history is persuasive in assessing whether a stated purpose is the

"actual" purpose or a "sham").

However, regardless of this uncertainty with the first stated purpose, the Fifth Circuit has held that "[i]n order for state activity to pass muster under *Lemon*'s first criterion a sincere secular purpose for the contested state action must exist; even if that secular purpose is but one in a sea of religious purposes." *Freiler*, 185 F.3d at 344; *see also Croft*, 624 F.3d at 167 (quoting *McCreary Cty.*, 545 U.S. at 860) ("the statute need not have 'exclusively secular' objectives to meet the sincerity standard; the touchstone is neutrality, and it is only '[w]hen the government acts with the ostensible and predominant purpose of advancing religion [that] it violates' the first prong of the Lemon test"). Defendant's second proffered purpose for the Statute—to allow both religious and nonreligious individuals to have a range of potential officiants for their ceremonies—is clearly secular. By looking at the Statute on its face—which allows both religious officials and secular governmental officials (*i.e.* current and retired judges) to solemnize marriages—and guided by the historical context of marriage solemnization in this Country discussed above, the Court concludes that the Statute has a secular purpose and that any religious purpose underlying the Statute, whether in fact pre-textual or otherwise, does not predominate. *See Martinez*, 846 F. Supp. 2d at 1143 (finding Nevada's marriage solemnization law had a secular purpose "to avoid a free exercise claim by permitting citizens the free exercise of traditional religious matrimonial rites with as little governmental interference as possible"). The Statute therefore passes the *Lemon* test's first prong.

Under the second prong the Court asks whether the Statute has the principal or primary effect of advancing or inhibiting religion. As previously stated, "[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion, . . . favoring neither one religion over others nor religious adherents collectively over

-21-

nonadherents." *Grumet*, 512 U.S. at 696 (internal citations omitted). The Supreme Court has also approved the endorsement test, which is construed as part of the second prong of *Lemon* and which considers "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *See Cnty. of Allegheny*, 492 U.S. at 592–93; *see also Croft*, 624 F.3d at 169 (interpreting the "endorsement test" as relating to *Lemon*'s second prong).

A law fails the second prong of the *Lemon* test if a person could "fairly understand its purpose to be the endorsement of religious belief." *Croft*, 624 F.3d at 168 (internal quotations omitted). Thus, a law scrutinized under the second prong is "seen from the eyes of a reasonable observer, informed and aware of his surroundings." *Van Orden v. Perry*, 351 F.3d 173, 180 (5th Cir. 2003). "[T]he challenged conduct must be viewed 'as an entirety, and on its contextual history, not merely the portion . . . claimed to constitute a religious symbol.'" *Croft*, 624 F.3d at 168 (quoting *Briggs v. Mississippi*, 331 F.3d 499, 506 (5th Cir. 2003)). Also, "[s]ome benefit flowing from state legislation or policy to religion is permissible: 'not every law that confers an "indirect," "remote," or "incidental" benefit upon [religion] is, for that reason alone, constitutionally invalid.'" *Id.* (quoting *Lynch*, 465 U.S. at 683).

Defendant argues that '[i]n the context of the continuing tradition of marriage ceremonies being performed by both secular and religious officials, [the Statute] does not represent an impermissible endorsement of religion" and that "[a]t most, the [Statute] provides a benefit to religion that is indirect or incidental." Doc. 11, Def.'s Mot. to Dismiss, 10. Plaintiffs counter that they "have pled sufficient facts to demonstrate that a reasonable observer would view the [Statute] as endorsing religion over non-religion because it allows religious celebrants to solemnize marriages while denying secular celebrants that same right." Doc. 18, Pls.' Resp., 13. And they further argue

that the benefit to religion is not indirect or incidental because "by permitting any religious official to solemnize a wedding, while asking secular celebrants to falsely tie themselves to an online 'faith' . . . the state is sending a clear message that religion–any religion–is preferred over secularism." *Id.*

Looking at the Statute as a whole, and guided by the longstanding tradition in this Country of allowing religious officials to conduct marriage ceremonies, the Court does not find that a reasonable observer would view the Statute's principal or primary objective to advance or endorse religion. The Statute does not discriminate among religions nor does it have the primary objective of favoring religion over nonreligion. At most, the Statute provides a benefit to religion that is indirect or incidental in light of the historical context of this Statute; however, this does not make the Statute unconstitutional. *See Croft*, 624 F.3d at 168. The Statute still provides for civil, nonreligious ceremonies performed by judges, while also allowing those who wish to be married in a religious ceremony to do so. Although Plaintiffs may take issue with the secular officials the Statute provides for, the Court does not find any binding case law to support that this selection constitutes an establishment of religion under *Lemon*'s second prong. The Statute therefore passes the *Lemon* test's second prong.

And finally, under the third prong, the Court asks whether the Statute fosters excessive government entanglement with religion. "Entanglement is a question of kind and degree," *Lynch*, 465 U.S. at 684, and this prong is violated where "comprehensive, discriminating, and continuing state surveillance" is required for enforcement, *see Lemon*, 403 U.S. at 619. Defendant argues that "the statute does not foster any entanglement with religion beyond recognizing what society has recognized for hundreds of years—that both secular and religious officials may conduct marriage ceremonies." Doc. 11, Def.'s Mot. to Dismiss, 10. Plaintiffs counter that the Statute fails this prong

because the Statute "delegates the government function of solemnizing marriages to religious celebrants but not to secular people." Doc. 18, Pls.' Resp., 13 (citing *Smith v. Jefferson Cty. Bd. of School Comm'rs.*, 788 F.3d 580, 587 (6th Cir. 2015)).

The Court finds that the Statute does not constitute an excessive governmental entanglement with religion. First, the Statute's grant of solemnization authority to religious officials applies to all religions and their officials equally and does not require any particular inquiry or qualification for the religious official by the state. *Cf. Martinez*, 846 F. Supp. 2d at 1144 (finding Nevada's solemnization statute violated *Lemon*'s third prong in part because "the Nevada statute appears to give unfettered discretion to the county clerk to decide whether a particular organization qualifies as a religious organization to trigger eligibility for the applicant seeking a certificate"). And second, while the Statute does grant religious originzations and their officials the authorization to solemnize marriages—which is supported by the history of marriage solemnization in this Country—the Statute also grants the same authority to secular governmental officials over whom religious organizations have no control. *Cf. Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 127 (1982) (finding a Massachusetts statute, which delegated authority to churches the power to veto applications for liquor licenses, violated the Establishment Clause). The Statute therefore passes the *Lemon* test's third prong.

Therefore, the Court finds that in light of the historical foundation of marriage solemnization in this Country as discussed above, the Statute satisfies all three prongs of the *Lemon* test: (1) the Statute is supported by a secular purpose (permitting both religious and nonreligious individuals to have a range of potential officiants for their ceremonies); (2) does not have a primary effect of advancing or endorsing religion (any benefit to religion is indirect or incidental); and (3) does not

foster an excessive entanglement with religion (no inquiry or qualification for the religious official is required by the state). Thus, Plaintiffs have failed to show that the Statute violates the Establishment Clause on this ground.

      c.      *Seventh Circuit's Approach*

Lastly, the Court discusses the Seventh Circuit's decision in *Center for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869 (7th Cir. 2014), which involved a similar constitutional challenge and was brought by the same organizational plaintiff in this case. Ultimately, however, the Court finds that while the Seventh Circuit's approach is persuasive, it is not binding on this Court, and the Court finds that the differences between the Indiana statute in that case and the Statute at issue here warrant a different outcome.

The Seventh Circuit ultimately found that the Indiana statute governing who may solemnize marriages violated the Establishment Clause because it favored religious organizations and their adherents over secular belief systems and their adherents. The Seventh Circuit began its analysis by stating that in the Establishment Clause context "[n]eutrality is essential to the validity of an accommodation," and that "[t]he Supreme Court . . . has forbidden distinctions between religious and secular beliefs that hold the same place in the adherent's lives."[5] *Id.* at 872–873. The Seventh Circuit then compared the beliefs of the secular humanist plaintiffs to those of atheists and stated

---

[5] The Court notes that the Seventh Circuit's determination that the Supreme Court "has forbidden distinctions between religious and secular beliefs that hold the same place in the adherent's lives" was premised on the Supreme Court's decisions in *Welsh v. United States*, 398 U.S. 333 (1970) and *United States v. Seeger*, 380 U.S. 163 (1965)—both of which were "decided under statutes rather than the Constitution"—as well as the Supreme Court's dictum in *Torasco* note 11. *See Ctr. for Inquiry*, 758 F.3d at 873. However, the Seventh Circuit found further support for this determination based on another non-binding Seventh Circuit case: *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005), which held that "when making accommodations in prisons, states must treat atheism as favorably as theistic religion." *Ctr. for Inquiry*, 758 F.3d at 873.

that although "[a]theists don't call their own stance a religion [, they] are nonetheless entitled to the benefit of the First Amendment's neutrality principle, under which states cannot favor (or disfavor) religion vis-à-vis comparable secular belief systems." *Id.* at 873. The court thus recognized that although "[a] state may accommodate religious views[,] . . . this does not imply an ability to favor religions over non-theistic groups that have moral stances that are equivalent to theistic ones except for non-belief in God." *Id.* at 873. Therefore, because the Seventh Circuit found that the secular plaintiffs in that case and their moral system were equivalent to religious ones, the court concluded that the Indiana statute violated the Establishment Clause by favoring those religious organizations in allowing their officials to legally solemnize marriages, while denying that right to nonreligious ethical groups. *See id.* at 873–74.

The Court finds that discrepancies between the Indiana statute and the state's actions in *Center for Inquiry*, which the court found unconstitutional, are distinguishable from the Statute and state action at bar and thus warrant a different conclusion. For one, the Indiana statute only allowed marriages to be solemnized by religious organizations who had "clergy" and specifically provided accommodations for certain enumerated religions (*e.g.*, Friends Church, German Baptists, Bahai Faith). *Id.* at 871. Additionally, in that case, counsel for Indiana had argued that certain religious and nonreligious groups, such as Buddhists and Humanists, were excluded under the statute because they "do[] not treat marriage as a sacrament and do[] not have . . . an 'organizational commitment to marriage,'" yet the court found that other groups (Baha'i and German Baptists) would be ineligible for those same reasons, "except that they ha[d] their own exceptions in [the statute]." *Id.* at 874 (cleaned up). But as Defendant argues, the Statute in this case "avoids these concerns by permitting any official of any religious organization, regardless of whether such official is 'clergy,' and by

refraining from any test or inquiry in the sincerity or validity of any religious official's beliefs." Doc. 11, Def.'s Mot. to Dismiss, 8. Thus, unlike the Indiana statute and Indiana's actions in favoring certain religious sects over others, Texas's hands-off approach to marriage solemnization in this case does not constitute a violation of the Establishment Clause.

Therefore, for all of the above stated reasons, the Court finds that under the two tests argued by the parties as well as the Seventh Circuit's approach, Plaintiffs have failed to show that the Statute violates the Establishment Clause. Thus, the Court **GRANTS** Defendant's Motion to Dismiss this claim.

### 2. Equal Protection Clause of the U.S. Constitution

Defendant next moves to dismiss Plaintiffs' Equal Protection Clause claim arguing that because the authorization to solemnize marriages is not a fundamental right and Plaintiffs are not otherwise members of a suspect class, Plaintiffs fail to satisfy the burden of overcoming rational-basis review. Doc. 11,Def.'s Mot. to Dismiss, 11–13. In response, Plaintiffs instead argue they are pursuing a "class of one" equal-protection claim and must show that the Statute fails to satisfy rational-basis review, but argue that there can be no rational basis for the state to discriminate between secular celebrants and religious ones. Doc. 18, Pls.' Resp., 14–16.

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment prohibits a government entity from engaging in three categories of discriminatory acts: those that (1) burden a fundamental right; (2) target a suspect class; or (3) treat one group or individual differently from a similarly situated group without a rational basis for the difference. *See Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). "[T]he purpose of the equal

protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Although the right to marry is a fundamental right protected by the Equal Protection clause of the Fourteenth Amendment, *see Zablocki v. Redhail*, 434 U.S. 374 (1978), the right to set the prerequisites for securing the legal status of marriage, is a sovereign function of the states. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975) ("The State . . . has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved."). As the Supreme Court explained in *Zablocki*, not every regulation involving marriage interferes with a fundamental right and is to be given rigorous scrutiny:

> By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

*Zablocki*, 434 U.S. at 386.

Because the Statute does not dictate who can and cannot be married, but instead sets requirements for how to achieve legal marriage status in Texas, it does not burden a fundamental right. Nor does the Statute target a suspect class as defined by law. Therefore, the Statute involves the third category of equal-protection claims: a so-called "class of one" claim where Plaintiffs bear the burden to show that: (1) the Statute intentionally treats them differently from similarly situated individuals; and (2) that there is no rational basis for that unequal treatment. *Wood*, 836 F.3d at 539; *see also Romer v. Evans*, 517 U.S. 620, 631 (1996) ("if a law neither burdens a fundamental right nor

targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end"). However, this test is highly deferential: "Statutory classifications are given broad deference under rational basis review and will survive 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

First, although the effect of the Statute—in only authorizing certain secular officials and religious officials to solemnize marriages in Texas—is that secular celebrants such as Individual Plaintiffs, and other CFI members, are unable to legally solemnize marriages in Texas or have their marriages solemnized by individuals of their choosing, it is unclear that the state is intentionally treating them differently. "Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason." *Woods*, 836 F.3d at 541. However, as Defendant argues, "Plaintiffs are not a class of one—they are being treated identically to all of the other individuals who are not authorized to conduct ceremonies by [the Statute]." Doc. 11, Mot. to Dismiss, 13. Plaintiffs have not shown, and the Court does not find that Plaintiffs are being singled out for differential treatment because they profess to have a secular belief system. Instead, as discussed above, the statute, based on the long history of marriage solemnization in this Country, provides alternatives for secular individuals who do not wish to be married by a religious official by providing a list of secular individuals who may solemnize a marriage. Thus, the Court does not find that the Statute intentionally treats Plaintiffs differently from similarly situated individuals.

Second, and more importantly, even assuming Plaintiffs meet the first element, it is clear to this Court that there is a rational basis for any unequal treatment caused by the Statute. To reiterate,

"[s]tatutory classifications are given broad deference under rational basis review and will survive 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Harris*, 827 F.3d at 365. "A statute is presumed constitutional, and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320–21 (citations omitted) (alterations in original).

Defendant argues that "[i]t is both rational and a legitimate legislative goal for Texas to accommodate both religious belief and secular belief, while still maintaining some limitations on who is authorized to perform marriages in order to maintain the respect and solemnity that marriage deserves." Doc. 11, Def.'s Mot. to Dismiss, 12; *see also* Doc. 19, Def.'s Reply, 1 ("the marriage ceremony itself is not a meaningless administrative hurdle, and the State has a legitimate interest in ensuring that marriage remains a solemn and august tradition"). And Defendant further argues that because Plaintiffs concede "that states are 'allowed to specify which individuals may perform marriage ceremonies' . . . it follows that not all individuals must be permitted to do so" and therefore, "[t]he State's exclusion of some individuals is . . . not irrational." Doc. 19, Def.'s Reply, 7 (quoting Doc. 18, Pls.' Resp., 9–10).

Plaintiffs argue that there can be no rational basis for allowing religious officials to solemnize marriages while denying Plaintiffs that same right because the Statute currently allows for a person ordained through "online churches"—which allegedly require no training, provide no standards for selecting officiants, and do not require the person hold an articulable set of beliefs—but denies that same right to Plaintiffs who are trained to solemnize marriages. Doc. 18, Pls.' Resp., 11–12, 15. They further argue that the fact that "Defendant even admits that the state is 'indifferent to the 'sincerity

or validity of any religious official's beliefs'" "undermines any possible reasoning the Defendant might offer for treating secular celebrants differently from religious ones." *Id.* at 15 (quoting Doc. 11, Def.'s Mot. to Dismiss, 8).

In essence, Plaintiffs want this Court to disregard the fact that the state is indifferent to the sincerity or the validity of any religious official or organization's belief system for their Establishment Clause claim, but find that the same fact weighs against Defendant's argument that the Statute has a rational basis for limiting the types of individuals who can solemnize marriages. However, in assessing the constitutionality of this Statute, the Court must take into account the reality the state faces when drafting a statute such as this one—which involves a practice that has been historically left to the hands of religious organizations, but that a state nonetheless regulates.[6] In other words, the state has an interest in and must ensure that it does not discriminate on the basis of religion or significantly entangle itself in the practices of religious organizations, while also ensuring the respect, solemnity, and gravity of marriage ceremonies in the state.

The Statute in this case rationally serves that purpose by limiting secular officiants to current and retired judges and by leaving it up to the religious organization—any religious organization—to determine who is authorized in accordance with its belief system to solemnize marriages. The fact that the Statute does not allow every secular individual trained to solemnize marriages to legally solemnize marriages in Texas does not make this statute unconstitutional. Instead, there is a rational

---

[6] As noted above, Plaintiffs "do not claim that states should not be allowed to specify which individuals may perform marriage ceremonies: Plaintiffs seek only to be included among those the state does authorize to perform such ceremonies." Doc. 18, Pls.' Resp., 9–10. Thus, the Court's inquiry here is whether there is a rational basis between the state's legitimate interest in regulating who can legally solemnize marriages and the distinction provided by the Statute.

basis for the Statute's limitation based on both the historical practice of allowing judicial and religious officials to solemnize marriages, and because these individuals and their respective organizations can reasonably be expected to ensure the prerequisites to marriage are met and that the ceremony contains the necessary level of respect and solemnity without the need for significant involvement and oversight by the state. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) ("[e]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices . . . . Where there are 'plausible reasons' for [a state's] action, 'our inquiry is at an end.' This standard of review is a paradigm of judicial restraint. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."). Thus, Defendant has advanced a rational basis for any potential unequal treatment caused by the Statute, which Plaintiffs have failed to negate. The Court therefore finds that the Statute does not violate the Equal Protection Clause, and thus, the Court **GRANTS** Defendant's Motion to Dismiss this claim.

### 3.    Article VI, Clause Three of the U.S. Constitution[7]

Next, Defendant moves to dismiss Plaintiffs' Article VI, Clause 3 claim arguing that the Statute does not constitute an impermissible religious test in violation of the Clause because: (1) the

---

[7] The Court notes that whether Article VI, Clause 3 of the U.S. Constitution applies to the states through the Fourteenth Amendment is an unsettled question under the law. *See Habecker v. Town of Estes Park, Colo.*, 452 F. Supp. 2d 1113, 1129 (D. Colo. 2006) (discussing *Torcaso v. Watkins*, 367 U.S. 488 (1961)). "In *Torcaso*, the Court held that Maryland's refusal to appoint an individual to the [sic] serve in the office of the Notary Public, based on that individual's refusal to declare his belief in God, was unconstitutional. Particularly relevant to the instant case, the *Torcaso* Court declined to consider whether Article VII applies to states, and instead based its decision on analysis of the First Amendment." *Id.* (citing *Torasco*, 367 U.S. at 489 n.1, 492–96) (internal citations omitted). Thus, the Court analyzes this claim assuming the Clause applies to Defendant.

role of wedding celebrants falls outside the scope of an "office or public trust" envisioned by this constitutional clause; and (2) even if they did fall within the scope, the Statute does not subject any such celebrant to a religious test. Doc. 11, Def.'s Mot. to Dismiss, 13–16.

At issue with this claim is whether marriage celebrants such as the Individual Plaintiffs and other CFI member celebrants are an "office" or position of "public trust" envisioned by the Clause. Article VI, Clause 3, provides that:

> The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

U.S. Const., Art. VI, cl. 3.

Ultimately, the Court finds that a reading of this Clause and the limited case law analyzing it forecloses Plaintiffs' argument that wedding celebrants fall within the scope of an "office or public trust" covered by this constitutional clause. First, the Court finds that the plain language of this Clause—read as a whole—supports finding that it was intended to apply to individuals holding public office either through election or appointment such as "Senators," "Representatives," "Members of the several State Legislatures," and "executive and judicial Officers." *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 903 (1995) ("Both the context and the plain language of the [No Religious Test] Clause show that it bars the States as well as the Federal Government from imposing religious disqualifications on federal offices.") (Thomas, J., dissenting).

In addition to the Clause's plain language, courts have found that the original purpose behind including this Clause in the Constitution was to ensure that public elected officials would not be subjected to religious tests as a prerequisite to civic service. *See Stewart v. Washington*, 301 F. Supp.

610, 611 (D.D.C. 1969) (stating that the Clause "recoil[s] from the odious test oaths that emerged in Britain in the 17th century, and which disqualified from public office all Catholics and non-conformists not subscribing to the doctrines of the Church of England"); *Smith v. Lindstrom*, 699 F. Supp. 549, 561 (W.D.Va. 1988), *aff'd sub nom.*, *Smith v. Cty. of Albemarle, Va.*, 895 F.2d 953 (4th Cir. 1990) ("Surely, the object of [Article VI, Clause 3] is to keep participation in the political community from being narrowed on the basis of religious adherence.").

And lastly, a closer reading of the majority of the cases cited by Plaintiffs of other courts purportedly expanding the protections of this clause to notaries public, jurors, and trial witnesses shows that most of those cases were in fact decided under the First Amendment's Free Exercise Clause and not under Article VI, Clause 3.[8] *See Torasco*, 367 U.S. at 489 n.1, 495 (holding that Maryland's law that required an individual declare a belief in God in order to serve as a notary public violated the First Amendment and the Court explicitly refused to consider this claim under Article VI); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1209, 1220–21 (5th Cir. 1991) (although the dissent discussed the implications of Article VI, Clause 3 on the case, the majority held that a judge's actions of placing a potential juror in contempt for refusing to make an affirmation or

---

[8] The Court recognizes that the District Court of Nevada in *Martinez v. Clark County, Nevada*, found that it was "premature" to dismiss the plaintiffs' claim that a Nevada statute governing the solemnization of marriages in the state violated Article VI, Clause 3 because the law at issue "limit[ed] a position of public trust, the authority to solemnize marriages, only to persons who identify themselves with a religious organization." 846 F. Supp. 2d at 1145. This Court is however not persuaded by *Martinez* and its analysis of this constitutional issue. First, the district court in *Martinez* assumed without any analysis that receipt of a certificate to solemnize marriages in Nevada constituted a "public trust" under the Clause. *See id.* at 1144–45. Second, the district court acknowledged that its holding on this claim was based in part on the fact that the parties had failed to adequately brief the issue, and thus a Rule 12(b)(6) dismissal was "premature." *Id.* at 1145. And third, the Nevada statute at issue in *Martinez* was different in relevant parts to the Texas Statute because it required Nevada officials to investigate the background and activities of an applicant seeking to solemnize marriages in the state and the applicant had to receive a certificate of permission to perform marriages in the state. *See id.* at 1136.

oath violated the potential juror's right to Free Exercise guaranteed by the First and Fourteenth Amendments).

Although, as Plaintiffs argue, the position of being a wedding celebrant does come with some modicum of trust, this is not dispositive on the issue because the fact remains that wedding celebrants are neither elected or appointed nor do they serve the typical functions of the elected or appointed public officials listed in the Clause. Religious wedding celebrants under the Statute do not even have to receive advanced permission from the state to perform marriage ceremonies nor do they have to meet particular state imposed requirements. Instead, religious wedding celebrants' qualification to lawfully solemnize marriages under the Statute—and thus, their limited grant of trust—is conferred by their respective religious organizations without any governmental oversight or intrusion. And unlike with the public officials listed in the Clause, or a notary public and juror, any trust bestowed upon wedding celebrants comes from the couple seeking to be married and not the general public.

Therefore, the Court finds that a plain reading of the Clause and the limited case law analyzing it does not support a finding that the Clause applies to wedding celebrants under the Statute. Thus, Plaintiffs have failed to state a claim under Article VI, Clause 3 and the Court **GRANTS** Defendant's Motion to Dismiss this claim.

4. <u>Unconstitutional-Conditions Doctrine</u>

And lastly, Defendant moves to dismiss Plaintiffs' unconstitutional-conditions doctrine claim arguing that the claim fails because none of Plaintiffs' constitutional rights are violated by the Statute. Doc. 11, Def.'s Mot. to Dismiss, 16–17. Plaintiffs counter that "Defendants mischaracterize the unconstitutional conditions doctrine" and that "[a] law can nevertheless violate the doctrine

whether or not an individual has a right to a government benefit." Doc. 18, Pls.' Resp., 17–18.

To begin, it is worth noting that "[c]ourts often struggle with when to apply the unconstitutional conditions doctrine, and the doctrine's contours remain unclear despite its long history." *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 349 (5th Cir. 2012) (citing *Dolan v. City of Tigard*, 512 U.S. 374, 407 n.12 (1994) (Stevens, J., dissenting)). However, the Fifth Circuit has stated that despite the confusion of when the doctrine applies, there is a "clear threshold premise: . . . if the government could directly achieve the result in question, then it is unnecessary to assess the result within the unclear framework of the unconstitutional conditions doctrine." *Id.* (citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 59–60 (2006)).

Based on the Fifth Circuit's guidance on when to apply the unconstitutional-conditions doctrine, the Court finds the doctrine inapplicable to this case. As discussed above, the Court has already found that although the Statute may in effect provide an indirect or incidental benefit to religious groups and their adherents over nonreligious ones, the Statute nonetheless is constitutional under the First and Fourteenth Amendments as well as Article VI, Clause 3. Moreover, the Court does not find that the ability to solemnize marriages is a "valuable government benefit" within the meaning of this doctrine, as there is no license, subsidy, or thing of value transferred to the marriage officiant by the state. *Cf. Dep't of Tex., Veterans of Foreign Wars of the U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Thus, Plaintiffs have failed to state a claim under the unconstitutional-conditions doctrine and the Court **GRANTS** Defendant's Motion to Dismiss this claim.

## IV.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss under Rule 12(b)(1) and finds that CFI and the Individual Plaintiffs have standing to bring their claims. However, the Court **GRANTS** Defendant's Motion under Rule 12(b)(6) on all of Plaintiffs' constitutional claims. Because the Court finds that its determination on the sufficiency of Plaintiffs' constitutional claims is purely a question of law, allowing Plaintiffs the opportunity to replead would be futile, and thus, the Court **DISMISSES with prejudice** all of Plaintiffs' claims. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Final Judgment to follow.

    **SO ORDERED.**

    **SIGNED: August 16, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE